We move to the fourth case this morning, Spiegel v. Corrine McClintic. Your Honor, if we were in Wilmette at this time, we could burn a flag in public, we could parade down the streets in Nazi uniforms, we could wear jackets emblazoned with things like F the Draft, but supposedly if we take a cell phone out in that village to photograph someone, and they might be offended in a public place, they could charge us with disorderly conduct. Now, you would think in the briefing that took place in the district court in here they would say, no, that's really not our policy. But in fact, in their briefing they've even stated, yes, we need discretion under a disorderly conduct statute to charge somebody with a violation of a disorderly conduct statute for photographing or videotaping someone in a public place. And the only person that we need for these charges is the person that we're photographing or videotaping. There doesn't need to be a breach of the peace. And that's what happened here. Now, the Supreme Court has limited the reach of this disorderly conduct statute, so they can't be used to suppress First Amendment rights. They're either limited facially or they're limited by decisions. And one of the decisions is certainly that there needs to be an actual public disturbance. You can't have attempted breach of a disorderly conduct statute. You need to have an actual one. And you need to have it really incite a breach of the peace. Fighting words are not enough. They're still protected by the First Amendment. Let's accept for a minute that Ms. McClintick was agitated and annoying with somebody photographing or videotaping her in a public place. Fine. That is not a reasonable case for something I don't know. But you cannot use the police to enforce a disorderly conduct statute against somebody that you dislike. Judge Bauer, I know that you were the one that wrote the opinion in Surplus Store. Judge Bauer's not here. Yeah. I thought he was on the phone. He'll be reading the transcripts. You can address him. Thank you, Your Honor. Could I address an empty chair, then? Yeah, sure. The District Court just made this up. And it really wasn't even in Wilmette's briefing. They didn't argue that Surplus Store was controlling in this case. The District Court came up with that. And in fact, if you look at Wilmette's own briefing, they said we need discretion to enforce a municipal ordinance or state statute for disorderly conduct. So Surplus Store was a case where they were saying, we're compelled by the state law. We have to enforce this pawn shop statute against someone. They weren't saying that, Wilmette and the District Court. They're not saying it here. They're saying we need discretion to do it. The other thing is, they have their own disorderly conduct ordinance. And there's an Illinois statute. They're not compelled under Illinois law to enforce Illinois's disorderly statute. They're a home rule unit. Like any other municipality that's home rule, they can choose whether or not they enforce the Illinois statute. They can enforce their own ordinance. And it wasn't even clear in the District Court which one they were claiming that they were enforcing. But even if they were adopting the Illinois statute as their own, because the two are similar, then Surplus Store doesn't apply. The other problems you have with this, Your Honor, is that if you are to say that we can enforce this disorderly conduct statute in such a manner to violate people's First Amendment rights, then you run into all sorts of problems with Supremacy Clause. Because you have to, as a municipality, also enforce federal laws. And federal laws under the Supremacy Clause take precedence. So you cannot interpret this disorderly conduct statute to say we have to enforce it this way. And they don't. What municipalities are arresting people for photographing or videotaping people in public places? It's absurd to even think that they could get away with something like this and say, we need to discretion to do it. Then what's going to happen after that? We need the discretion to decide whether taking out a phone is an attempted disorderly conduct statute? Will they get to arrest people for taking out their phones? We can't allow something like this, where everybody has a phone now, to allow a disorderly eviscerated surplus store. Because here's the problem when you say, I, as a municipality, have to enforce state laws. Well, state laws create property rights. Now if you say, as a municipality, you have to enforce a state law, then people will say, fine. I have a property right in you enforcing a state law. I can bring a 1983 action against my municipality because they refused to enforce a state law. Doesn't have to be criminal. Could be a regulation. And you have problems with that in that everybody will be bringing a 1983 action. And then federal courts now will have to supervise the allocation of money that goes for each specific law enforcement item. Your Honor, they've delegated this to the police. And if you look at their briefing, they've actually ratified that decision. So we actually have a Monell case here. Because they didn't say, no, these were just two officers. We don't agree with what they were doing. They went off on their own. What they're saying is, yes, we agree with what they did. And they need discretion to do it. That's a Monell case right there. They're saying, this is our interpretation of the ordinance. We're going to enforce it this way against you. And they haven't retreated from that. So you can actually have a single instance of a violation of a constitution when the municipality commits itself to that path. Now even if I don't have a Monell case, I don't think they're off of the hook. Because then you have an equal protection argument. Let's say this was the only time that they decided that they were going to enforce this disorderly conduct statute against someone for photographing or videotaping people in a public place. This is the only time. Fine. You did it, we're alleging and are pleading, because of animus. You don't like Mr. Spiegel. You have a lawsuit against him for another building code violation where you're seeking anywhere from $230,000 to $460,000 for a building code violation. You don't like him. There's animus here. Now we have an equal protection class of one claim. So if we don't have a Monell claim there, we have an equal protection class of one claim against them for enforcing it. And let them come forward and say, why are we enforcing this statute against this person this way? I don't know if there's anybody else that's been arrested under a disorderly conduct statute for this. Let them explain it. Finally, your honors, if in fact we don't have a Monell or we don't have a class of one equal protection claim, let's assume that the state is compelling them to do this. I don't believe that. Let's assume the state's compelling them to enforce the disorderly conduct statute. If it's state action, then we get the right to enjoin you, or at least seek to enjoin you. We may not get damages in the federal court, but under the 11th Amendment, we could certainly go under ex parte young and seek to enjoin the municipality and the state from enforcing it this way. So either of three ways, they're not off of the hook. And the district court didn't even allow us to amend our complaint after the district court came up with a surplus store opinion to allege in our third amended complaint. Fine. If that's your policy, then we have other remedies against you. You can't say this is your municipal policy and then say, well, it's our municipal policy, but you don't have a cause of action. Well, if in fact arresting someone or threatening to arrest one for photographing or videotaping someone in a public place is against the law, there's a remedy. It may not be under the First Amendment. It may be under class of one equal protection, or it may be an injunction under ex parte young. If your honors don't have any questions, I'll save my time for rebuttal. All right. Thank you. Thank you. Mr. Murphy? I'm Mr. Hartigan. I'm from the village of Wilmette. May it please the court, Mr. Murphy will be following me. Where to begin? Unfortunately, Judge Bower's not here, but I know he'll be hearing argument. And his surplus store and exchange decision is very much good law. And it was cited by the district court in support of its decision to dismiss this matter outright. And to borrow from that opinion, there are so many problems with this lawsuit, it's hard to know where to begin. Well, I'll begin with the fact that Mr. Spiegel was given multiple opportunities to amend his complaint. In fact, he did it on two occasions. The first time was before the village was brought into this matter. The second time was after the village was dismissed for lack of subject matter jurisdiction. You will note that Mr. Spiegel requests declaratory relief only. And the first issue for this court to decide is whether it was an abuse of discretion for the district court to deny plaintiff's request for a preliminary injunction against the village for its attempt to enforce its own laws by village ordinance or state law. And the court correctly found that the first element was the only element that it needed to consider, which was whether or not there was proof based on the allegations alone that Mr. Spiegel was reasonably likely to succeed on the merits. The court found that based on its review of the complaint, including the facts common to all counts, as well as its own inferences and experiences, which it's entitled to take into consideration, it found that the preliminary injunction aspect of this was not going anywhere. So then the next issue for this court to decide is whether or not the district court erred in dismissing count one. That's the only count that's been brought against the village. You hear First Amendment, 14th Amendment, class one, equal protection. There's a 1983 general count against the village, which does sound in Monell, or at least it attempted to. The pleadings that were currently before it, and found that the enforcement of state law alone does not raise a claim for Monell liability. Again, citing the surplus store and exchange ink decision. The court had difficulty, as did the village's counsel below, in terms of determining what was it that Plaintiff was alleging. There was various iterations of what it was he was going after. And finally, the court determined that Plaintiff was raising a ratification theory of Monell liability. In other words, the village's officers threatened Mr. Spiegel with arrest, and that because the superiors at the village did nothing about this, that that in fact ratified this behavior. And so the court found that there were no allegations that a municipal official with final policy making authority approved the subordinates' decision on the basis for it, citing Baskin versus the Spleens. Mr. Spiegel was never arrested. He was allegedly threatened to arrest. We never got to file an answer to the complaint. And he was never actually prosecuted. So the whole theory here is the very threat of arrest, whether or not that violates his constitutional rights, the district court found that it did not. And then the third issue for this court to decide, and I see I'm coming up on my time here in a few minutes, is whether or not the district court abused its discretion in denying Mr. Spiegel's attempt to file a third amendment complaint and to vacate the dismissal order entered in November of 17. Rule 15a1 allows for free amendment, either following service of a complaint or receipt of a 12b motion. In this case, plaintiff filed an amended complaint two days after filing his initial complaint to bring my client in. After the case was dismissed for lack of subject matter jurisdiction, the district court gave Mr. Spiegel leave to file his second amended complaint. And he did that in November of 2016 after an approximate one year of briefing on various motions to which I was not involved as an appellate counsel. The court finally held that there was insufficient pleadings to state a claim against both the village and Mrs. McClintock, who is here today. But the court didn't do this without giving Mr. Spiegel and his attorney a chance to defend his pleadings. The court invited Mr. Zydackis to file a supplemental brief as to why his claim against the village should not be dismissed. And he did that. He filed a supplemental memo on Monell liability, attempting to show why he had a claim against the village. And again, the court found that based upon its review of that memorandum and all the pleadings that had been filed before then, that Mr. Zydackis and his client, Mr. Spiegel, had failed to state a claim against the village under Monell. And this is within the court's discretion to do. The court can deny a motion for leave to amend if it finds undue delay, bad faith, or dilatory motive on the part of the movement, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, and futility of the amendment. Those are all reasons for which, or by which, a district court can deny a litigant's attempt to clean up his pleadings, which Mr. Spiegel and his attorney were given multiple opportunities to do. I would respectfully suggest that all of these reasons apply here. And while I was not a part of the lower court proceedings, the court were to look at the docket. There was multiple motions, multiple attempts to clean up these pleadings. The district court gave counsel every opportunity to defend them and found that he simply did not state a claim against the village under the Monell case that is very much good law. And with that, I have a few minutes left if there are any questions. Okay, thank you. Good morning, my name is Gene Murphy. I represent Corrine McClintock in court today, judges. I apologize. To say and this relationship, there's problems, it's antagonistic. We passed that three years ago. Let me give you a little context. And I'm sure you read in plaintiff's pleadings, he makes reference to my client as being overweight and frequently drunk and attaches photographs of her in her swimsuit in his pleadings. This is not a lawsuit about First Amendment. This is not a lawsuit about government action. This is a lawsuit about one man who got kicked off his condo board and is now raining havoc on the remaining members. Who in their right mind takes pictures of people in their swimsuits and attaches those photographs to a pleading? Who in their pleading, and I've only been doing this 31 years, says that a litigant in a particular case references her weights and says she's frequently drunk. This is purely a lawsuit like the other lawsuits in an effort to intimidate Ms. McClintock and the rest of the condo members, board members, and or residents. How many condos are there in this association? I believe there is nine, Judge. It's a freestanding building in Walnut Creek. Small condo, small. Yes, this is not a large group of people. And I will tell your honor, I may not have the numbers correctly, the average age of the other residents other than Mr. Spiegel is upwards of past 80. So yeah, we've got a couple in their 90s. I may not be exact there, but these are not younger retirees. These are people a little further down the line. And in an effort to intimidate these folks, and I'm not here to discuss whether a guy standing before at a pool taking pictures of women in their 70s and 80s in their swimsuits is protected by the First Amendment or not, I don't particularly care at the end of the day. With respect to the actions of Ms. McClintock, you can see that this is a personal vendetta. No one says those types of things in pleadings. But secondly, do we have a conspiracy? Do we have a conspiracy between the government, the police of Wilmette, and my client? Is in fact my client an agent of the state? Well, the case law is real clear. You need to express agreement. And this is law school kind of stuff in terms of we cannot have a conspiracy because we may or may not have a similar goal. We may not like the Packers, so somehow we have a conspiracy as bear fans against the At the end of the day, you need to express agreement. Fries deals with that very clearly. With respect to the officer's actions, again, counsel pointed out to judges that Spiegel wasn't arrested. No one was arrested. This was police officers responding to a complaint of disorderly conduct. Now, in terms of standards, while I may or may not have a constitutional right to say or do certain things, that conduct can still be disorderly. I may have the right to say it, but the way I say it, and how I say it, and where I say it, still may lead itself to disorderly conduct. So you have my client calling the police when Mr. Spiegel engaged in this behavior of videotaping, not photographing just, but also videotaping people in their 70s and 80s in their swimsuits at the pool. So, in terms of reaching the bar, can he plead conspiracy? Can he plead an agreement between my client and the village of Wilmette, in essence, through their police department? And there was nothing in Plaintiff's papers that led to an actual agreement between my client and the police department of Wilmette conspiring against Mr. Spiegel, the videographer. Moving, secondly, to intrusion upon seclusion. I actually had to look this up. I didn't know what it was when I first saw it. Taken at its whole and taking every word that was true, at the end of the day, what's our yardstick? What's our barometer? Did Plaintiff meet his burden? This is a 12b motion. He did not allege anguish and suffering. No damages here. My client was where she could be lawfully, doing what she could be lawfully, peered into his, may or may not have peered to, we didn't get a chance to answer, into Mr. Spiegel's condominium. Judge Kokoris seemed to indicate that wasn't sufficient. What is your thought on that? In terms of? That pleading the damages wasn't necessary for purposes of the tort to go forward. Because the damages were not specified. Mr. Spiegel never stated, this is how I, if this activity did in fact occur, how was I harmed? And that's the caused anguish and suffering. That's the Vega case. How was he harmed? Never put, never hit the yardstick. That's what this is about. You got to hit the yardstick before you can go to the next level. And Plaintiff did not do that. And with respect to the intrusion upon seclusion, because my time is running out, we don't have to, we know the elements. But at the end of the day, Judge Ellis was very clear, I may take all the rest as true, but at the end of the day, counsel, meaning Plaintiff's counsel, did not plead damages to Mr. Spiegel with respect to that behavior. My seniors and high school twins said, Judge, or Dad, you can't even order food in seven and a half minutes. It appears that I got it done. I'm here to answer any questions at your invitation. I don't believe so. Thank you for your time. The question is not whether Ms. McClintock was distressed or agitated by somebody taking pictures of her in a public place. Maybe she was. The question before your honors with the constitutional issue is, can she enlist the state to arrest him for that? And if we can arrest Mr. Spiegel for taking pictures, why can't we arrest just about anybody else? And if we're going to give Wilmette the discretion to do it, let's give everybody in the municipality as well. We'll have every police officer out there in the nation deciding, I have discretion to decide whether you're taking a photograph or videotaping a person, rose to the level that it agitated this person enough, or I'm going to arrest you for disorderly conduct. That's the state that we want to live in? Oh, I can see what's going to happen now. Every political opponent is going to be using this as well, aren't they? Police are going to become our best friends. Nobody's going to be able to carry a cell phone because they're carrying a weapon. It's absurd to think that we're going to be able to use the police to arrest people for photographing or videotaping people in public places. If Ms. McClintock has a cause of action, criminal law is not the place to go. You have civil law. Assault, trespass, intentional infliction of emotional distress, this isn't a criminal case. We don't throw people in jail for photographing or videotaping people in public places. I have an express agreement between Ms. McClintock and the Wilmette police, as I've alleged in my pleadings. She told Mr. Spiegel, and it was alleged, that if Mr. Spiegel photographed or videotaped her again in a public place, the Wilmette police will come and arrest him. In fact, the Wilmette police called Mr. Spiegel and told him, if in fact you photograph or videotape her again, we will come and arrest you. They didn't say where she could be videotaped, if it's in her bedroom or in her toilet, wherever. They said, if you do it again, we're going to come and arrest you. Is that not an agreement? They're going to arrest somebody for photographing or videotaping someone in a public place. It doesn't even matter if somebody else is there that could be agitated. Despite what counsel says, the disorderly conduct mandates a breach of the peace. A breach of the peace is not a breach of the peace, in my mind, or the victim's mind. It's a breach of the peace where others are around you, bystanders, where you're going to have disorder. That's why it's called disorderly conduct. It's not depressive conduct or agitative conduct for the victim. You have to cause a breach of the peace. If my client is simply photographing or videotaping her on a sidewalk and she's the only person there, I don't care if she's jumping up and down and falls over. That is not a disorderly conduct because there's nobody else there to witness it. Ms. McClintick always likes to portray herself as some sort of victim. What counsel didn't tell you was she lurks around all the time, peering into Mr. Spiegel's windows. It's not only to call the police on him. She did it and actually wrote up a rule violation against him, taking pictures inside his unit saying, your unit has some disorder in it. There's a rule and regulation they pass saying, if your condo is in need in all respects, then we get a rule violation against you. She actually went, took a picture of the inside of his unit, wrote up a rule violation against Mr. Spiegel and had the board, of which her husband sits on the board, adjudicate that. The only reason they're doing this, Your Honors, is that if there are three rule violations now, supposedly the association can start a foreclosure proceeding against Mr. Spiegel. That's what they're going to do. She has her husband on the board. She's there. Let's get some rule violations against him so we can adjudicate three rule violations and we'll kick him out of the condos. This is somebody that is not an innocent bystander. As to these photographs that were reportedly taken of Ms. McClintick at the pool, the video and the complaint show that Mr. Spiegel was videotaping Ms. McClintick's husband and another person on the board talking. What he believes they were talking about was condominium matters. Under the Illinois Condominium Property Act, this is a three-member board. A quorum is two. Two people cannot get together to talk about condominium business outside an open meeting. They do it all the time. That's why he was videotaping Ms. McClintick's husband and this other person, Mr. Wade, at the pool. They were talking about condominium matters, he believes. Then what happens is Ms. McClintick runs into the video waving her hands when she sees Mr. Spiegel, like this, seeing him. Afterwards, she calls the police on him. She says he was videotaping her. She was so agitated now that she wants the police to come and arrest him. That's why the Wilmette police then called up Mr. Spiegel one more time and said, if you in fact photograph or videotape her again, we are going to come and arrest you. That was the whole purpose behind that. She wasn't the subject of this. She ran into the actual viewing angle of it when she saw Mr. Spiegel videotaping her husband and Mr. Wade. Look at Castle Rock. That's a Supreme Court case that is very recent. It said, peace officer shall do this. A peace officer shall do that. I would think that's mandatory language when I see that. The Supreme Court said no. A municipality does not have to follow shall in a language. There's no shall here in the disorderly conduct statute. Why did the Supreme Court say, municipality, you don't have to even follow shall? Because they know once we start down that road where we say a municipality is compelled to enforce laws, then we've created property rights in people to get their laws enforced. It's not just that. It's regulations and everything else. Everybody will be bringing a 1983 case now. They'll say, police, you are compelled to enforce this law. The Supreme Court said, you have to enforce it. You didn't? I'm going to bring a 1983 action against you. That's why they said, you can't do this. They realized what the end game is in all of this. The end game is, now you've got the federal courts that are going to decide every little adjudication when a person says that the police or even a government won't enforce a law. You've created property rights in enforcement of laws which you can't do. That's why they even said shall was not mandatory. It's the third amended complaint. I was dismissed one time for lack of subject matter jurisdiction before the second amended complaint. The second amended complaint was the only complaint that was dismissed on the merits. That's when the district court said, you haven't stated a Monell claim, by the way, and we're relying on surplus store. I said, fine. You're going to make up that surplus store is binding here? Counsel, you're running in. In fact, your time has expired. I'll let you finish. You've got another 30 seconds. Go ahead. I amended my third amended complaint to say then the individual officers are liable. That's the alternative to Monell, right? If you don't have Monell liability, you have liability against the individual officers. So I said, let me amend that. I'll name those individual officers. And there are cases out there that say they're not even entitled to qualified immunity on this. Your Honor, we cannot have differences in the First Amendment from state to state, municipality to municipality, and police to police. The Supreme Court has said they want objective categorical criteria with good reason. We're not allowing these Wilmette or any other police officer to criminalize the First Amendment whenever it's in their discretion. Thank you very much, Counsel. Thank you, Your Honor. Court to take the case under advisement.